553 So.2d 1012 (1989)
STATE of Louisiana
v.
Queenie MORGAN, Kenneth J. Ledet and Russland Enterprises, Inc.
STATE of Louisiana
v.
Bryan T. LEDET.
Nos. KA-9261, KA-9265.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1989.
*1014 Harry F. Connick, Dist. Atty., Sandra Pettle, Asst. Dist. Atty., New Orleans, for plaintiff/appellee.
Joseph Meyer, Jr., New Orleans, for defendants/appellants.
Before GARRISON, PLOTKIN and BECKER, JJ.
BECKER, Judge.
Bryan Ledet, on April the 2nd of 1987, was charged by bill of information with two counts of obscenity, one involving the film "Stray Cats", the other involving the film "Pumping Irene". He was arraigned on May the 7th of 1987, and pled not guilty. On June 1st of 1987, Queenie Morgan, Kenneth Ledet, and Russland Enterprises were each charged by bill of information with two counts of obscenity involving the same films. On the day of trial, by agreement, both cases were consolidated and a six member jury found all the defendants guilty as charged.
The defendants were sentenced as follows; Morgan, two years at hard labor on each count, suspended, two years inactive probation, court costs and a $1,000.00 fine; Kenneth Ledet, two years at hard labor on each count, suspended, two years inactive probation and a $2,250.00 fine; Bryan Ledet, two years at hard labor on each count, suspended, two years inactive probation, and a $2,250.00 fine, and Russland Enterprises, a $5,000.00 fine. From these convictions and sentences the defendants appeal.

APPEALS PATENT
An examination of the record reveals two errors patent. The minute entry of the date of trial states that all defendants were represented. However, it does not state that the defendants were actually present. Minute entries must affirmatively show that a defendant was present at all stages of the proceedings listed in C.C.P. Article 831, State v. Pope, 214 La. 1026, 39 So.2d 719 (1949); State v. Hancock, 502 So.2d 1098 (La.App. 4th Cir.1987). The identification of Queenie Morgan by detective Jimmy Stewart at trial establishes her presence. The presence of the corporation is established through its counsel. C.Cr.P. Art. 836.
As was done in State v. Veller, 532 So.2d 846 (La.App. 4th Cir. 1988), this court ordered the trial court to issue a per curiam, which it has done, affirmatively showing that Bryan and Kenneth Ledet were present with counsel at all stages of the trial, thus correcting this error patent.
Morgan and the Ledet brothers were each given fines and imprisonment on each count, thereby establishing that they were sentenced on both counts. However, the corporation was simply fined $5,000.00 with no particularization as to each conviction. Therefore, the case must be remanded for resentencing of Russland Enterprises Inc. so that a penalty can be imposed on both convictions. State v. Perkins, 480 So.2d 451 (La.App. 4th Cir.1985).

FACTS
All parties stipulated at the beginning of trial, that should Detectives Jimmy Stewart and Edward Messina testify, they would testify that they went to 5400 Crowder Blvd. where Stewart purchased a rental agreement for "Stray Cats" and that after viewing the film a search warrant was obtained to seize the videotape.
Detective Warren Riley testified the police department had received a complaint concerning ABC Video Store, 5400 Crowder Blvd. in Orleans Parish. Riley checked with the City Finance Department and learned that Russland Enterprises, 26th Street, Metairie, was the owner. Riley went to the offices of Russland Enterprises and learned that it was run by Bryan Ledet and that the vice president of the corporation was his brother, Kenneth Ledet. The State then introduced an invoice signed by Bryan Ledet showing that "Pumping Irene" and "Stray Cats" were the property of the corporation.
Detective Timothy Bayard testified he executed a search warrant at 5400 Crowder Blvd. on March 13, 1987, and seized the video cassettes "Stray Cats" and "Pumping Irene". Bayard explained that the boxes of the tapes are kept on a shelf where the *1015 potential viewer makes his selection. The customer then obtains the tapes, which are kept locked behind the counter, from the cashier. He identified the Articles of Incorporation, showing the president of the corporation as Bryan Ledet and the vice president as Kenneth Ledet.
Detective James Stewart testified he went to the ABC Video, 5400 Crowder, to rent a video in connection with the investigation. He chose one rated "X", and took it to the cashier Queenie Morgan. The tape was kept in a sealed area, accessible only to employees. He and his partner viewed "Stray Cats," documented it, and obtained search and arrest warrants.
The jury then viewed the films.
The parties then stipulated that if Detective Riley testified he would say that he attempted to rent "Deep Throat", and that Morgan told him "No, don't get that one; why don't you get the video `Pumping Irene', that's XXX."
At the end of the trial, the parties stipulated that Morgan would testify that she was the cashier at 5400 Crowder, that she is now the record keeper, and that she could identify the video rental clubs membership list.

ASSIGNMENT OF ERROR NO. 1
The defense argues the State did not prove scienter as to the defendants.
A determination of guilty of obscenity requires proof of scienter or knowledge. Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); State v. Burch, 365 So.2d 1263 (La. 1978). The State is therefore required to show that the accused had knowledge of or had reason to know of the character and nature of the contents of the materials for exhibition for which he is responsible. State v. Wrestle, Inc., 360 So.2d 831 (La.1978), rev'd in part, Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979), Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). The State need not, however, show that the defendant knew the legal status of the materials to be obscene. Burch, supra.
In Wrestle, a corporate defendant and its president were convicted of obscenity after being charged with the exhibition and display of two obscene motion pictures, exhibited in booths at the premises operated by the corporate defendant. The films were located in small booths in a rear room of the store, in which were situated coin-operated projectors. By insertion of a quarter, the booths permitted viewing a portion of the film onto a small viewing screen. The president argued there was no evidence that he had knowledge of the contents, character or nature of the obscene films exhibited by the corporate codefendant. The evidence showed: The defendant Burch was the president of the corporation which operated the store. It was a local corporation, and Burch lived in the locality. In the back of the store was a small room with twelve coin-operated viewing machines. Burch was seen in the store by a police officer on at least one of his visits to it. A defense witness saw Burch on the premises some six months before, building the booths for the peep shows in which the obscene films were exhibited. The films lasted from eight to ten minutes, and quarters had to be periodically inserted, costing from three to four dollars to see a film in its entirety. The Supreme Court found the evidence sufficient to support the conviction of both defendants, applying the following test:
As summarized in State v. Lindinger, 357 So.2d 500 (La. 1978): Sufficiency of the evidence is a factual matter not reviewable on appeal. The reviewing court may reverse only if there is no evidence to prove the crime or an element of it. In determining whether the circumstantial evidence constitutes some evidence of the crime, the reviewing court must determine whether there is some evidence from which, if accepted by the jury, it could reasonably conclude beyond a reasonable doubt that it excluded every other reasonable hypothesis, as required by La.R.S. 15:438, than the essential element sought to be proved (here, that the accused Burch knew or *1016 had reason to know of the nature and character of the films exhibited by his corporation). See also State v. Schwander, 345 So.2d 1173 (La.1977).
Assayed by this test, some evidence was introduced by which the jury could reasonably conclude beyond a reasonable doubt that the resident president of this local corporation (who had actually participated in building the booths apparently intended for the sole purpose of exhibiting pornographic films) had knowledge or reason to know of the nature and character of the films exhibited therein. Although the issue is close, we are unable to hold that this assignment presents reversible merit.
Id. at 836.
In State v. Entertainment Specialists, Inc., 386 So.2d 653 (La. 1980), the defendant corporation was convicted of obscenity, and the defendant argued the trial court erred in denying its motion for new trial. The defendant asserted that the State did not prove beyond a reasonable doubt that the defendant was, in fact, doing business as Glenwood Theatre. The Supreme Court used the same standard of review it used in Wrestle: "If there is some evidence of an essential element of the crime, no question of law is presented, sufficiency of the evidence being a matter to be decided by the trier of fact." Id. at 655. In Entertainment Specialists, the State introduced a lease which identified the defendant as the corporation which leased the premises where the films were shown. The lease provided the premises should only be used as a theater. The only evidence, therefore, was circumstantial. The Supreme Court ruled:
Applying these principles to the facts herein, we find that evidence introduced does not exclude every reasonable hypothesis of innocence. The facts that the evidence tends to prove are that the defendant corporation leased the premises in question for a period of three years and that under the lease, they were only allowed to use the place as a theater, and were not allowed to sublet the theater without the permission of the lessor. Yet, assuming these facts to be true, this does not eliminate every reasonable hypothesis of innocence. For instance, these facts do not eliminate the possibility that the defendant did, in fact, sublet the premises with or without the permission of the owner. Nor does it eliminate the possibility that the lease was dissolved or assigned. Most important, the proof that the defendant leased the premises does not eliminate the reasonable hypothesis that the defendant did not know the nature of the films being shown therein. There is no evidence that the defendant hired the personnel to operate the theater, or that it ordered the films or in any other fashion participated in the exposition of these films, except for the lease. The fact that the defendant may have leased the building does not prove that the defendant conducted the business therein or was aware of the nature of the business conducted therein. Since the introduction of the lease did not exclude every reasonable hypothesis of the defendant's innocence, the state has failed to prove an essential element of the crime.
Id. at 655-656.
Wrestle and Entertainment Specialists are the only Louisiana cases to address directly the sufficiency of the evidence to prove the element of scienter of a corporate defendant. Both cases applied the standard of review used before the stricter standard for sufficiency was announced in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under Jackson, in assessing the sufficiency of evidence to support a conviction in a direct evidence case, the reviewing court must determine whether, viewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. State v. Fuller, 414 So.2d 306 (La. 1982). Where the conviction rests on circumstantial evidence, as here, the rule is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. R.S. 15:438.
The facts that the State relied upon to prove scienter as to the corporation were:
*1017 (1) The corporation owned the video store.
(2) An invoice signed by the president of the corporation, Bryan Ledet, showed that the two movies were owned by the corporation.
(3) The movies were rated X and XXX.
(4) A sign identifies the store as an "Adult Book Store".
(5) No one under eighteen may enter the store.
(6) The pre-printed rental agreement seized from the store provides that the video tapes were not to be viewed by people under eighteen years of age, states that the tapes contain sexual matters and nudity presented in a frank and candid manner and inquires as to whether the customer is associated with any law enforcement agency.
Since Burch establishes that a defendant need not know the legal status of the films as obscene, the facts presented are sufficient to establish that the corporation had knowledge or had reason to know of the character and nature of the contents of the materials for exhibition for which it was responsible.
As to Bryan Ledet the State introduced evidence of the following:
(1) He was the original incorporator and president of the corporation.
(2) He ran the home office.
(3) An invoice which was seized pursuant to a search warrant issued for Russland Enterprises' home office in Metairie, Louisiana established that the corporation was the owner of the films in question and that the films which were delivered to the corporate home office were marked "X" and "XXX."
Similarly, the evidence admitted as to Kenneth Ledet was that
(1) He is vice president of the corporation and its agent for process; and
(2) He authored and signed a letter to all clerks of the store, establishing the store's policy with respect to the acceptance of personal checks for merchandise.
Therefore, there was ample evidence for the jury to determine that both Bryan and Kenneth Ledet were active in the operation of the corporation's affairs and had actual knowledge of the materials being distributed from the store.
The issue of Morgan's scienter is straightforward. The State introduced evidence that Morgan was the cashier, that she personally handed over movies marked "X" and "XXX," that she, by her presence in the store, knew it to be an "adult" book store and forbidden to juveniles, and most importantly that she recommended "Pumping Irene" over "Deep Throat" because it was marked "XXX." In State v. Price, 475 So.2d 6 (La.App. 4th Cir.1985), writ denied, 484 So.2d 664 (La.1986), this court found the evidence sufficient to prove knowledge of obscenity where the defendant Price was the hotel clerk who took the money, wrote out a receipt and activated the movie recorder, and defendant Woolverton was the night manager and operated the recorder. Accordingly, the evidence presented here as to Morgan was sufficient to establish scienter.
Therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. TWO
In this assignment, the defense argues the State was not required to prove the contemporary community standard.
In Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), the U.S. Supreme Court, reviewing the constitutionality of New York's and California's obscenity statutes, said that obscenity is to be defined by reference to community standards. In Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the U.S. Supreme Court held the standard was not meant to be a national one. The language of the Louisiana statute tracks very closely that set forth and approved of in Miller and requires the trier of fact to determine whether "The average person applying contemporary community standards would find that the conduct, taken as a whole, appeals to the prurient interest." See State v. Amato, 343 So.2d 698 (La. 1977). *1018 As such, "contemporary community standard" is part of the definition of obscenity in R.S. 14:106(A)(3), and it is the standard by which the jury must determine whether the particular material is obscene. The juror is permitted to rely on the understanding of the community from which he comes as to contemporary community standards. Amato, supra; State v. LeBlang, 530 So.2d 601 (La.App. 4th Cir.1988), writ denied, 536 So.2d 1213 (La.1989). The State is not required to prove "contemporary community standard" as an element of the crime. This assignment is also without merit.

ASSIGNMENT OF ERROR NO. THREE
The defense argues the State violated their right to equal protection by systematically using its peremptory challenges to exclude males.
Because a peremptory challenge is the statutory right to reject a given juror without disclosure of reason or motive, State v. Richmond, 284 So.2d 317, 326 (La.1973), a prosecutor is ordinarily entitled to exercise peremptory challenges "for any reason at all, as long as that reason is related to his view concerning the outcome" of the case to be tried. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Based upon the guarantees of the Equal Protection Clause, however, the United States Supreme Court in Batson set a limitation on the State's free use of its peremptory challenges. Batson promulgated that prosecutors were forbidden from challenging potential jurors solely on account of their race, on the assumption that black jurors as a group would be unable to consider impartially the State's evidence against a black defendant. This jurisprudential rule has been codified in Louisiana. By Acts of 1986, No. 323, the Louisiana Legislature amended C.Cr.P. art. 795(B) to provide: "[a] peremptory challenge by the State shall not be based solely upon the race of the juror." In State v. Adams, 533 So.2d 1060, 1063 (La.App. 4th Cir.1988), writ denied, 540 So.2d 338 (La.1989), Plotkin dissenting, this court held:
If the Supreme Court had desired to abolish the peremptory challenge or prohibit the exercise of the challenges on the basis of race, gender, age or other group classifications, the opportunity to do so was presented in Batson. United States v. Hamilton, 850 F.2d 1038 (4th Cir.1988). An examination of Batson, however, indicates that "in light of the important position of the peremptory challenge in our jury system, the Court intended Batson to apply to prohibit the exercise of peremptory challenges on the basis of race only." United States v. Hamilton, 850 F.2d at 1042-1043.
Cases involving exclusions from jury service based upon race are considered to be in a class by themselves. Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 2170, 33 L.Ed.2d 83 (1972) (White, J. Concurring). Thus, although we do not applaud the striking of jurors for any reason relating to group classifications, we decline to extend the rule of Batson beyond instances of purposeful racial discrimination in the selection of petit juries.
Id. at 1063.
This court in Adams specifically held that Batson does not extend to cases involving exclusions from jury service based upon sex. It affirmed the conviction for solicitation with intent to commit unnatural carnal copulation which had been returned by an all woman jury.
It should also be noted, in this case, the State used peremptory challenges to exclude both women and men and that a man did in fact serve on the jury.
This assignment is also meritless.

ASSIGNMENT OF ERROR NO. FOUR
The defendant in this assignment of error argues that "public portrayal" is an element of the crime, and that the Louisiana Supreme Court erred when it held in State v. Peacock, 461 So.2d 1040 (La.1984) there is no public portrayal requirement for a violation of R.S. 14:106(A)(3), the subsection under which these defendants are charged. In Peacock the court stated:
As mentioned previously, the litigants and the trial court are under the impression *1019 that in order to obtain a conviction for a violation of subsection (3), the State must prove that the hard core sexual conduct was "publicly portrayed" as subsection (2) seems to require. If this is true, then the sale of a pornographic movie by a merchant to a customer for use in the customer's private home would not be encompassed by the statute. Although we use the term "legislative intent" with great circumspection, we do not believe that an overall reading of the statute indicates a legislative intent to exclude such sales from the coverage of the statute."
Peacock stands as authority and therefore this assignment lacks merit.

ASSIGNMENT OF ERROR NO. FIVE
Defense counsel, at trial, offered into evidence a compilation of the video clubs membership who live in Orleans Parish, showing the members' names and addresses. This was offered to show that members came from all sections of town and represented both sexes and all economic brackets. By its introduction the defense was attempting to establish that by contemporary community standards, the material was not considered to be obscene. The trial court allowed the compilation and the actual membership books into the record, but ruled that they could not be shown to the jury. The judge allowed the defense to argue that both sexes belonged to the club and that all sections of the city were represented by arguing evidence as specific as the block of the street. Evidently to protect the private nature of the membership, the judge would not allow the names and addresses of the specific members to be read to the jury nor allow the jury to view the actual membership lists.
The defense counsel argues the trial court improperly restricted his case by not allowing him to argue the full names of the members and that he should have been allowed to show that wealthy and prominent people of the community were members. However, the applicable standard for determining whether an object is obscene is the average person applying community standards. Since the average person is the standard, whether a wealthy or prominent person determines the material is not obscene is irrelevant. Further, there was no prejudice to the defendants by the jury's failure to view the membership list or have the names of the members read to them, since counsel was given wide latitude in arguing his point to the jury.
We also find this assignment to be without merit.
We therefore affirm the convictions and sentences of Queenie Morgan, Bryan Ledet and Kenneth Ledet, affirm the conviction of Russland Enterprises Inc. but remand Russland Enterprises Inc. for resentencing on both counts.
CONVICTIONS AFFIRMED; SENTENCES AS TO QUEENIE MORGAN, BRYAN LEDET AND KENNETH LEDET AFFIRMED REMANDED FOR RESENTENCING AS TO RUSSLAND ENTERPRISES INC.
PLOTKIN, Judge, dissents in part and concurs in part, with written reasons:
Although I concur in the majority's decision to affirm the convictions and sentences of Queenie Morgan, Bryan Ledet and Russland Enterprises, I dissent in its decision affirming the conviction of Kenneth Ledet.
The only evidence presented by the State at trial to prove that Kenneth Ledet had the requisite scienter or knowledge of the contents of the films in question was the following: (1) Proof that Kenneth Ledet was registered with the Louisiana secretary of state as vice president of the corporation, and (2) Proof that Kenneth Ledet signed a letter establishing the business' check-cashing policy more than one year prior to the incidents that are the subject of this prosecution. No proof was presented indicating that Kenneth Ledet had actual knowledge that the materials in question were obscene or that he was active in the daily operations of the corporation, contrary to the majority's statement on page 1017 of the opinion.
*1020 Additionally, I am concerned about the defendants' claim that the state used its peremptory challenges to exclude males from the petit jury panel. No record of the jury composition is included in the record of this case; the defendants state that the jury was composed of six women, while the State claims that the jury included five women and one man. That means that the jury was at least 80 per cent female. The majority cites State v. Adams, 533 So.2d 1060, 1063 (La.App. 4th Cir.1988), writ denied 540 So.2d 338 (La. 1989), in which I dissented, for the proposition that peremptory challenges may properly be used to exclude members of one sex from the petit jury. In the instant case, I am not dissenting from the majority's conclusion that the defendants' assignment of error based on this issue is meritless because the issue was not raised at trial. However, I still believe, as I stated in the dissent in Adams, that peremptory challenges may not properly be used in this manner.