578 So.2d 182 (1991)
STATE of Louisiana
v.
VIDEO JOE, INC., and Joe B. Howard, Individually and as President of Video Joe, Inc.
No. 90 KA 0761.
Court of Appeal of Louisiana, First Circuit.
March 28, 1991.
*184 Walter P. Reed, Dist. Atty., Covington, William R. Campbell, New Orleans, for the State.
Wendell E. Tanner, Slidell, for defendants.
Before EDWARDS, WATKINS and LeBLANC, JJ.
WATKINS, Judge.
Video Joe, Inc. and Joe B. Howard (individually and as President of Video Joe, Inc.) were each charged by indictment with two counts of obscenity by distributing, exhibiting and displaying an obscene videotape, violations of LSA-R.S. 14:106. Not guilty pleas were entered on behalf of both defendants. Immediately before the jury trial, the state nolle prosequied the second count charged against both defendants.[1] After the trial, defendants were found guilty as charged. Joe B. Howard was sentenced to imprisonment at hard labor for one year, and Video Joe, Inc., was sentenced to pay a fine of $2,500.00. Defendants have appealed, alleging ten assignments of error, as follows:
1. The trial court erred by failing to sustain defendants' objection to State Exhibit # 4, based on the state's failure to lay a proper foundation prior to the introduction of this exhibit into evidence.
2. The trial court erred by failing to sustain defendants' objection to state witness Dr. Ernest Von Den Haag's testimony defining the term "prurient interest."
3. The trial court erred by sustaining the state's objection to the introduction of Defense Exhibit # 1.
4. The trial court erred by failing to sustain defendants' objection to the introduction of State Exhibit # 5 into evidence.
5. The trial court erred by failing to sustain defendants' objection to the testimony of David McKenzie, a state witness on rebuttal.
6. The trial court erred by failing to grant defendants' motion for post-verdict judgment of acquittal alleging the evidence viewed in the light most favorable to the state does not reasonably permit a finding of guilty.
7. The trial court erred by failing to grant defendants' motion for new trial alleging that the verdicts are contrary to the law and the evidence and that the ends of justice would be served by granting a new trial.
8. The prosecution improperly used four of its peremptory challenges to remove the four jurors who admitted on voir dire to renting X-rated movies.
9. LSA-R.S. 14:106 is unconstitutionally vague and overbroad.
10. The trial court erred by allowing the prosecution to introduce the videotape into evidence and by allowing the prosecution to show the videotape to the jury.
In brief, defendants expressly abandoned assignments of error numbers one and eight.
On March 22, 1988, during an undercover operation, Slidell Police Detectives Mark Cranford and Patrick Dennis went to the Video Joe, Inc. store in Slidell in an unmarked police unit. Pursuant to the undercover operation, the detectives had been instructed to rent a triple X-rated videotape from the store. When they arrived at the store, Det. Cranford parked and remained inside the police unit. Det. Dennis exited the unit, went into the store, and browsed around the main floor area for a few minutes. He then went into a separate back room inside the store where the empty boxes for individual "adult movies" were kept. While inside the back room, he began looking at the empty boxes in order to find one for a movie which was designated as triple X-rated. When he found one, specifically "Sins of the Wealthy," Det. Dennis copied its identifying number on a piece of paper, left the room, and went to the counter where Cameron Reed, an employee of Video Joe, Inc., was working. Det. Dennis handed the piece of paper to *185 Mr. Reed. Mr. Reed filled out a rental card for "Sins of the Wealthy," which Det. Dennis signed. Det. Dennis then paid the rental fee, received the videotape of "Sins of the Wealthy," and walked out of the store to the police unit where Det. Cranford was waiting. The detectives then went to the Slidell Police Department station where they viewed the videotape.

ASSIGNMENT OF ERROR NO. TWO:
In this assignment, defendants contend that the trial court erred by failing to sustain defense counsel's objection to state witness Dr. Ernest Von Den Haag's testimony defining the term "prurient interest."
Without objection by defendants, Dr. Von Den Haag was submitted by the state, qualified and accepted by the trial court as an expert witness in the field of sociology and for purposes of providing an opinion as to the literary, artistic, political or scientific value of the videotape entitled "Sins of the Wealthy", and whether the conduct shown therein would appeal to the prurient interests. Thereafter, during the state's direct examination of Dr. Von Den Haag, the prosecutor asked Dr. Von Den Haag to define the term "prurient interest." At that point, defendants entered an objection without stating any basis for the objection. In overruling defendants' objection, the trial court agreed with the state's position that the subject matter of the state's question was within the field of expertise in which the witness had been qualified. Dr. Von Den Haag then defined "prurient interest" and gave his opinion that "Sins of the Wealthy" appealed to the prurient interest.
By failing to object to the trial court's acceptance of the witness in the field of expertise for which he was submitted by the state, defendants waived the right to object to the state's subsequent questioning of the witness regarding the definition of "prurient interest" and the witness's opinion as to whether "Sins of the Wealthy" appealed to the prurient interest. See LSA-C.Cr.P. art. 841. In any event, we find the trial court's ruling permitting the witness to define "prurient interest" was within the trial court's discretion and that the witness' opinion (that "Sins of the Wealthy" appealed to the prurient interest) was within the limits of proper expert testimony. LSA-C.E. art. 702.[2]
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. THREE:
In this assignment, defendants contend that the trial court erred by sustaining the state's objection to the introduction of Defense Exhibit # 1 on relevancy grounds.
At trial, defense witness Reinhard Dearing,[3] the Chief of Staff for the City of Slidell, identified Defense Exhibit # 1 as a letter to Joe B. Howard dated June 18, 1985, which he had written and signed. Chief Dearing explained that the letter was written after a conversation between Mr. Howard and himself, and a subsequent conversation between Chief Dearing and Slidell Assistant Chief of Police Terry Parta. Mr. Howard had inquired of Chief Dearing if there would be any problems with the local police regarding his rental trade of X-rated movies at the store; Mr. Howard explained that the movies would be kept behind a locked door. Chief Dearing testified that he told Mr. Howard that he would talk to Mr. Parta about the matter and get back in touch with him. We note that, immediately prior to introducing Chief Dearing's testimony, defendants presented testimony given by Mr. Parta. During Mr. Parta's testimony, he stated that he did not remember any conversations with Chief Dearing concerning Video Joe, Inc., or any *186 other video stores in Slidell. Nevertheless, Chief Dearing indicated that he had a conversation with Mr. Parta. When defense counsel offered Defense Exhibit # 1 in evidence, the state objected on relevancy grounds. Out of the jury's presence, the trial court sustained the state's objection, but allowed a proffer of the letter. The substance of Defense Exhibit # 1 (which is handwritten) is as follows:
Joe:
Terry Parta informs me that as long as the tapes are not available/accessible to public view and as long as he receives no complaints that you are renting to minors he or his department will take no action against you. He assured me that there would be no harassment.
 Reinhard
Relevant evidence is evidence which tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. LSA-C.E. art. 401. All relevant evidence is admissible except as otherwise provided by law. LSA-C.E. art. 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time. LSA-C.E. art. 403.
Defendants essentially argue on appeal, as they did at the trial court level, only that the proffered exhibit was relevant to the issue of Mr. Howard's alleged lack of intent to commit the instant offense. Defendants submit that the exhibit clearly indicates an attempt by Mr. Howard, prior to obtaining X-rated movies, to ascertain whether he could legally rent such movies, indicating his lack of intent to violate the law. We are not convinced that the conversation of Mr. Howard which precipitated the inquiry Chief Dearing made on Mr. Howard's behalf represented an attempt by Mr. Howard to determine the legality of his operation; it is just as probable that it was merely an attempt to determine if he could conduct the operation without enforcement by the local police of the applicable obscenity proscriptions of the state or city.
We find that, regardless of any purported assurances in the proffered exhibit that the police would take no action against Mr. Howard, such assurances could not serve to preclude, diminish or otherwise affect the intent requirements established by state law in LSA-R.S. 14:106, nor serve as a defense to a violation of LSA-R.S. 14:106. Cf. United States v. Hale, 784 F.2d 1465 (9th Cir.), cert. denied, 479 U.S. 829, 107 S.Ct. 110, 93 L.Ed.2d 59 (1986), abrogated in part on other grounds sub nom., United States v. Weber, 915 F.2d 1282, 1286 n. 6 (9th Cir.1990), opinion amended on other grounds and superceded by 923 F.2d 1338 (9th Cir.1990). Accordingly, we conclude that defendants failed to demonstrate that the proffered exhibit was relevant.[4] Thus, we find no error by the trial court in refusing to admit the proffered exhibit into evidence. Cf. Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).
Moreover, the content of the proffered exhibit was merely cumulative evidence. The trial court permitted defense counsel wide latitude in questioning Chief Dearing about the two conversations. During that questioning, Chief Dearing identified the proffered exhibit as the letter he had written to Mr. Howard and testified as to the letter's essential content. Even if the proffered exhibit constituted relevant evidence which was erroneously excluded, the exhibit's relevance was at best marginal with minimal probative impact, and the exclusion was harmless. Cf. State v. Dunn, 548 So.2d 95 (La.App.4th Cir.1989), writ denied, 556 So.2d 55 (La.1990); State v. Dewhirst, 527 So.2d 475 (La.App.5th Cir. 1988), writ denied, 535 So.2d 740 (La.1989).
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. FOUR:
In this assignment, defendants argue that the trial court erred by failing to sustain defense counsel's objection to the introduction *187 into evidence of State Exhibit # 5, a diagram of the interior of the Video Joe, Inc. store made by Slidell Police Detective Mark Cranford. Defendants claim that the diagram was inaccurate and highly prejudicial to their defense.
This exhibit was offered in evidence during the state's presentation of evidence on rebuttal. Defendants objected to its introduction on the basis that Det. Cranford's testimony reflected that the diagram was not an accurate depiction of the store. In overruling the objection, the trial court indicated that any inaccuracies in the diagram would go to the weight of the exhibit.
Det. Cranford testified that he was familiar with the layout of the Video Joe, Inc. store as it existed on March 22, 1988, that he made the diagram of the store's interior, and that the diagram was an accurate depiction of the store's interior. During cross-examination, Det. Cranford stated that he recalled only one mirror in the store but admitted that there could have been a second one, which he had not included on the diagram.
Diagrams are admissible to aid the jury in understanding testimony if they are a reasonable visual demonstration of the events which the witnesses are relating. State v. Pleasant, 489 So.2d 1005 (La.App.1st Cir.), writ denied, 493 So.2d 1218 (La.1986). The trial court's ruling on the admissibility of a diagram will not be disturbed on appeal unless there has been an abuse of discretion. State v. Pleasant, 489 So.2d at 1012.
The lack of skill as a draftsman and the inaccuracies of the diagram go to the weight to be accorded to the sketch but do not defeat its admissibility. State v. Lawrence, 365 So.2d 1356 (La.1978), cert. denied, 444 U.S. 846, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979). Defendants had the opportunity, on cross-examination of Det. Cranford, to point out to the jury any inaccuracies in the diagram. See State v. Pleasant, 489 So.2d at 1012.
We find no abuse of discretion by the trial court in admitting the exhibit into evidence. Accordingly, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. FIVE:
In this assignment defendants contend that the trial court erred by failing to sustain defense counsel's objection to testimony given by Pearl River Police Captain David McKenzie, during the state's case on rebuttal, on the basis that the testimony constituted improper rebuttal.
LSA-C.E. art. 611 E provides that in a criminal prosecution the state shall have the right to rebut evidence adduced by the defendant.[5]
Generally, rebuttal evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. State v. Brown, 504 So.2d 1086 (La.App.1st Cir. 1987). However, the state may not reserve part of its case-in-chief for rebuttal testimony after the defense has put on its case and when it can no longer present evidence to rebut the state's case. State v. Turner, 337 So.2d 455 (La.1976). The determination of whether the evidence is rebuttal evidence, and therefore admissible, is addressed to the sound discretion of the trial court. State v. Johnson, 475 So.2d 394 (La.App.1st Cir.), writ denied, 478 So.2d 143 (La.1985).
Heidi Glover, an employee of the Video Joe, Inc. store, testified for the defense. Ms. Glover testified that she began her employment with the store in approximately February of 1985. At that time, there was a room at the back of the store from which X-rated films were rented.
In rebuttal, Capt. McKenzie testified he participated in a task force operation with respect to video stores throughout St. Tammany Parish; he went to the Video Joe, Inc. store in Slidell. At that juncture of Capt. McKenzie's testimony, the prosecutor asked: "And when you entered the store, did you go into the room that was marked *188 `Adult Movies,' as shown on State's Exhibit # 5?" Defense counsel then objected on the basis that the question called for an answer that was not relevant and that did not rebut any part of defendants' case. After the trial court overruled defense counsel's objection, Capt. McKenzie testified that he entered the room in question in mid-December of 1986 and found R-rated but no X-rated or triple X-rated movies in the room.
The testimony did not prejudice the defendants. Nor did the state purposefully hold back the testimony to obtain an undue advantage over defendants. We conclude that the trial court did not abuse its discretion in admitting this testimony.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. SIX AND SEVEN:
In these assignments, defendants contend that the evidence introduced at trial was insufficient to support their convictions.
In reviewing the sufficiency of the evidence to support a conviction, we are controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime were proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984). The standard has been codified in LSA-C.Cr.P. art. 821.
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, 488 So.2d 965 (La.1986).
The definition of obscenity which is applicable to the instant situation is set forth in LSA-R.S. 14:106A(3), which provides as follows:
A. The crime of obscenity is the intentional:
* * * * * *
(3) Sale, allocation, consignment, distribution, dissemination, advertisement, exhibition, or display of obscene material, or the preparation, manufacture, publication, or printing of obscene material for sale, allocation, consignment, distribution, advertisement, exhibition, or display.
Obscene material is any tangible work or thing which the trier of fact determines (a) that the average person applying contemporary community standards would find, taken as a whole, appeals to the prurient interest, and (b) depicts or describes in a patently offensive way, hard core sexual conduct specifically defined in [LSA-R.S. 14:106A(2)(b) [6] ], and *189 (c) the work or thing taken as a whole lacks serious literary, artistic, political, or scientific value.
Notwithstanding defendants' assertions to the contrary, the "contemporary community standards" referenced in LSA-R.S. 14:106A(3) do not constitute an element of the crime of obscenity. Thus, rather than being an element which the state is required to prove, the standards are those by which the trier of fact must determine whether the particular material is obscene; the trier of fact is permitted to rely on the understanding of the community from which he comes as to contemporary community standards. See State v. Amato, 343 So.2d 698 (La.1977); State v. Morgan, 553 So.2d 1012 (La.App.4th Cir. 1989), writ denied, 558 So.2d 600 (La.1990).
At trial, the state introduced the videotape entitled "Sins of the Wealthy," into evidence. Det. Dennis identified this exhibit as the videotape he rented from the Video Joe, Inc. store.
The videotape is an "adult movie" containing numerous scenes of persons engaged in ultimate sexual acts. The scenes show explicit, closeup depiction of the genitalia of those persons; the scenes include acts of vaginal and anal sexual intercourse, cunnilingus, fellatio and masturbation.
The state introduced State Exhibit # 3, a pink rental card, into evidence. Det. Dennis identified the card as the rental card which he signed to rent "Sins of the Wealthy."
Mr. Reed testified that he worked parttime at the Video Joe, Inc. store from April of 1987 until the following December when he began working full-time; his full-time employment at the store continued until August of 1988. His duties included working behind the counter, renting tapes to customers, running errands, and some cleaning duties.
Mr. Reed explained that the store maintained rental cards for videotapes and that these cards were retained by the store and not given to rental customers. X-rated videotapes had pink cards and all other tapes had white cards. Mr. Reed stated that cards were maintained for every film referenced in the backroom. The other employee, Ms. Glover, acknowledged that the store's use of a pink rental card meant that the card was one for an "adult film."
Apparently for the purpose of showing community acceptance or toleration of Xrated movies or "adult movies," defendants introduced Defense Exhibit # 2, which consists of 27 pink rental cards. Ms. Glover stated that these cards were similar to the card for "Sins of the Wealthy," State Exhibit # 3; her testimony reflects that each of the cards comprising Defense Exhibit # 2 relates to a particular "adult movie" of Video Joe, Inc. She related that each card indicates the movie's title, the source from which it was purchased, and the dates and number of times the particular movie was rented. Ms. Glover indicated that her initials appeared on some of these cards indicating that she had rented the movies to customers.
Nevertheless, Dr. Von Den Haag, the state's expert witness, testified that he viewed the film and that, in his opinion, the film had no literary, artistic, political or scientific value and appealed to the prurient interest.
A determination of guilt of obscenity requires proof of scienter or knowledge. However, the state need not show that the defendant knew the legal status of the material to be obscene; it is sufficient that, under the statute, the state be required to show that the accused had knowledge of or had reason to know of the character and nature of the contents of the material for distribution or exhibition of which he was responsible. This proof may be circumstantial. State v. Wrestle, Inc., 360 So.2d 831 (La.1978), affirmed in part, reversed in part on other grounds sub nom., Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979).
The state introduced State Exhibit # 4, a certified copy of the records of Video Joe, *190 Inc. on file with the Louisiana Secretary of State. This record consists of: the articles of incorporation and the initial report of the corporation showing that Joe B. Howard was one of two incorporators and directors, that he held 51 shares of the 100 authorized shares of stock in the corporation, and that he was the corporation's registered agent; an annual report of the corporation bearing the signature of Joe B. Howard in his capacity as president of the corporation.
Mr. Reed testified that he has known Joe B. Howard since he began his employment at the store in April of 1987. Mr. Reed stated that Mr. Howard was the owner of the store and his employer, and that Mr. Howard paid his salary through March 22, 1988.
Mr. Reed saw Mr. Howard at the store on "countless" occasions. Although Mr. Howard was usually in the store's office, Mr. Reed stated that he had seen Mr. Howard behind the counter and "basically all over the [s]tore."
Detective Cranford testified that he had seen Mr. Howard at the store about ten times, either in the office or behind the counter.
Defense witness Heidi Glover testified that she was an employee of the Video Joe, Inc. store. Ms. Glover stated that she began her employment there in February of 1985.
Both Mr. Reed and Ms. Glover were familiar with the backroom in the store which was marked as being for adults or persons twenty-one or more years of age.
Viewing all the evidence in the light most favorable to the prosecution, we find that the jurors, as rational triers of fact applying contemporary community standards, could have concluded beyond a reasonable doubt and to the exclusion of any reasonable hypothesis of innocence that: the videotape of "Sins of the Wealthy" appeals to the prurient interest, depicts in a patently offensive way hard core sexual conduct and lacks serious literary, artistic, political or scientific values; that Joe B. Howard, individually and as president of Video Joe, Inc., knew of the character and nature of the videotape; and that the obscene videotape was intentionally distributed by renting it. There was ample evidence from which the jury could have made these conclusions. Cf. State v. Morgan, supra. Because the evidence is legally sufficient to support defendants' convictions, the trial court correctly denied defendants' combined motion for post-verdict judgment of acquittal and a new trial alleging insufficiency of the evidence.
These assignments lack merit.

ASSIGNMENT OF ERROR NO. NINE:
In this assignment, defendants contend that the provisions of LSA-R.S. 14:106 A(3) and those defining "hard core sexual conduct" in LSA-R.S. 14:106 A(2)(b) are unconstitutionally vague and overbroad and that, consequently, these provisions do not put them on notice as to what materials are proscribed as obscene.
The constitutionality of the provisions of LSA-R.S. 14:106A(2)(b) and (3) has consistently withstood constitutional attack. Contentions identical to those made by defendants in regard to these provisions were addressed and rejected by the Louisiana Supreme Court in State v. Wrestle, Inc., supra, affirmed in part, reversed on other grounds sub nom., Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979). See also State v. Honore, 564 So.2d 345 (La.App.5th Cir.), writ denied, 569 So.2d 968 (La.1990); State v. Freeman, 544 So.2d 22 (La.App.4th Cir.1989); State v. Louisiana Toy Co., 483 So.2d 1264 (La. App.4th Cir.), writ denied, 488 So.2d 686 (La.1986).
Hence, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. TEN:
In this assignment, defendants contend that the trial court erred by allowing the prosecution to introduce State Exhibit # 2-B, the videotape of "Sins of the Wealthy," into evidence and by permitting the prosecution to play the videotape during trial in the jury's presence. Defendants argue that the videotape was illegally and unconstitutionally seized when the officer who rented it failed to return it to *191 defendants; consequently, defendants claim that the videotape should have been suppressed together with other illegally seized evidence which was suppressed when the trial court granted defendants' motion to suppress evidence.
The record reflects that on August 31, 1988, defendants filed a motion to suppress all evidence obtained as a consequence of an illegal and unconstitutional search and seizure. On the first day of defendants' trial, after jury selection was completed and before the trial itself began, the trial court held a hearing on defendants' motion to suppress items that had been seized at the Video Joe, Inc. store on April 8, 1988, pursuant to a search warrant. At the beginning of the hearing, defense counsel expressly conceded that the motion to suppress did not extend to the videotape of "Sins of the Wealthy;" at the conclusion of the hearing, the court granted the motion to suppress.
Later during trial when the prosecutor offered the videotape into evidence, defense counsel stated that he had no objection to the offering; the trial court admitted the videotape into evidence. Thereafter, immediately prior to the presentation of Dr. Von Den Haag's testimony, the videotape was played in the jury's presence.
Defendants expressly waived any objection to the admissibility of the videotape into evidence and particularly their right to complain of the alleged illegal and unconstitutional seizure of the videotape; they expressly conceded that their motion to suppress did not extend to the videotape, (see LSA-C.Cr.P. art. 703 F), and they had no objection to the admission of the videotape when it was offered in evidence. See State v. Francis, 345 So.2d 1120 (La.), cert. denied, 434 U.S. 891, 98 S.Ct. 267, 54 L.Ed.2d 177 (1977).
This assignment lacks merit.
For the reasons set forth hereinabove, the convictions and sentences of Video Joe, Inc., and Joe B. Howard are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The indictment also charged Cameron Reed, an employee of Video Joe, Inc., with both counts; however, these charges were nolle prosequied by the state.

We note the trial transcript uses different spellings for the first and last names of Cameron Reed. We have elected to use the spellings as shown on the indictment and court minutes.
[2] We note that the provisions of the Louisiana Code of Evidence apply to criminal prosecutions instituted or trials commenced on or after January 1, 1989. See State v. Adams, 550 So.2d 595, 596 n. 2 (La.1989); State v. Stanfield, 562 So.2d 969, 974 n. 1 (La.App.3rd Cir.), writ denied, 567 So.2d 609 (La.1990). Because the instant trial was held on May 22-23, 1989, the provisions of the Louisiana Code of Evidence apply; hence, defendants' assertion in brief that the former (repealed) provisions of LSA-R.S. 15:464 are applicable herein is erroneous.
[3] We note that the transcript in this case uses different spellings for Capt. Dearing. We have elected to use Reinhard Dearing since this spelling is used on his letterhead.
[4] The police assurances might have been relevant to a defense of entrapment, but as correctly noted by the trial court, defendants did not argue entrapment as a defense.
[5] The Official Comment (1) provides that the provisions in art. 611 E are based on the former provisions of LSA-R.S. 15:282, which were repealed by the Louisiana Code of Evidence, and the cases decided under the former statute.
[6] LSA-R.S. 14:106A(2)(b) defines "hard core sexual conduct" as follows:

(b) Hard core sexual conduct is the public portrayal, for its own sake, and for ensuing commercial gain of:
(i) Ultimate sexual acts, normal or perverted, actual, simulated, or animated, whether between human beings, animals, or an animal and a human being; or
(ii) Masturbation, excretory functions or lewd exhibition, actual, simulated, or animated, of the genitals, pubic hair, anus, vulva, or female breast nipples; or
(iii) Sadomasochistic abuse, meaning actual, simulated or animated, flagellation, or torture by or upon a person who is nude or clad in undergarments or in a costume that reveals the pubic hair, anus, vulva, genitals, or female breast nipples, or in the condition of being fettered, bound, or otherwise physically restrained, on the part of one so clothed; or
(iv) Actual, simulated, or animated touching, caressing, or fondling of, or other similar physical contact with a pubic area, anus, female breast nipple, covered or exposed, whether alone or between humans, animals, or a human and an animal, of the same or opposite sex, in an act of apparent sexual stimulation or gratification; or
(v) Actual, simulated, or animated stimulation of a human genital organ by any device whether or not the device is designed, manufactured, or marketed for such purpose.