## LAMB vs. THE STATE.

CRIMINAL LAW AND PRACTICE. *The calling and challenging of jurors in criminal trials.*

1. Under the statutes of this state, in the impaneling of a jury for the trial of a criminal prosecution (whether the offense be one punishable by imprisonment for life or one of lower grade), twelve jurors must be *called in the cause*, before the accused can be put to his challenges; and the full number of twelve unchallenged and unsworn jurors must be maintained in the box until the parties have exhausted their challenges or accepted the jury. Then (and not before) the jury should be sworn in the cause.

2. In this case each juror was called singly, singly questioned for ground of challenge for principal cause and for favor, and, none such appearing, was singly submitted to the parties for peremptory challenge, before another was called, and, if not challenged, was at once sworn in the cause; and so on, until the jury was full. *Held*, error, for which a judgment against the accused must be reversed.

ERROR to the Circuit Court for *Pierce* County.

The plaintiff in error, having been convicted of murder in said court, brought the case here for review on writ of error. One of the errors complained of was in the ruling of the court as to the manner in which the accused should exercise the right of peremptory challenge. The first juror called having been examined on oath by the court, and held competent, the court ruled that as there was no ground of challenge for principal cause, the defense must exercise the right of peremptory challenge at once as to said juror, and thereafter as each juror should be called and held competent, instead of waiting until the panel should be full. And this ruling was enforced in respect to jurors subsequently called.

*Henry C. Baker* and *John C. Spooner*, for plaintiff in error, as to the rights of the accused in such a case, with reference to peremptory challenges, cited 4 Black. Com. (Cooley's ed.), 352; *Cooly v. State of Texas*, Ch. Legal News, Oct. 18, 1873, p. 28; 6 Pa. St., 531; 4 Barn. & Ald., 476; 5 Cush., 295.

*The Attorney General*, for the state, argued that the time or manner of making peremptory challenges is not provided for in the statute (Tay. Stats., 1940, § 4), and the better rule seems to be, that it is for the court, and not the prisoner, to determine the order in which the challenges shall be made. *State v. Cameron*, 2 Chand., 172; *State v. Potter*, 18 Conn., 166; *State v. Pierce*, 8 Iowa, 231; id., 477; *Comm. v. Rogers*, 7 Met., 500; *Walker v. Collier*, 37 Ill., 362.

RYAN, C. J. The right of challenge has always been held essential to the fairness of trial by jury. The common law

has always, in all cases, allowed challenges to the array, and challenges to the polls for principal cause and for favor. These are intended to secure the integrity of the panel and the indifference of the jurors. But in trials for capital crimes, the mercy of the common law exceeded this just rule, to the end that, within reasonable bounds, the accused should not be held to accept a juror, apparently indifferent, whom he distrusted for any reason or for no reason. Except during a brief statutory interruption, in England, it has always allowed peremptory challenges to the accused, *in favorem vitæ*, "upon his own dislike, without showing any cause" (Coke Litt., 156 b); "a provision full of that tenderness and humanity to prisoners, for which our English laws are justly famous." 4 Black. Com., 353.

The right comes from the common law, with the trial by jury itself. "It is no American invention. Our fathers brought it to this country more than two centuries ago." STOW, C. J., in *State v. Cameron*, 2 Chand., 172. The common law gave thirty-five peremptory challenges. But the number is now generally regulated by statute.

In this state the number is limited to four in cases not punishable by imprisonment for life; and in those cases, to twenty-four. R. S., ch. 179, secs. 3 and 4.

The practice in the exercise of this right has not been settled by this court. In *Schumaker v. State*, 5 Wis., 324, the court took occasion to say: "We do not feel called upon to make any suggestions as to the proper practice to be adopted by the circuit courts in impaneling juries in criminal cases; but obviously all rules of practice must necessarily conform to the requisition of the statute, and be adapted to secure all the rights of the accused." That is, where there is no statute, the practice must not conflict with or abridge the right as it exists at common law.

We judge by this record that the practice is not altogether uniform, as it ought to be, in the circuit courts; but we under-

stand the practice generally prevailing here from the begin-
ning, to be this : The clerk calls jurors in the case, until
twelve are in the box; the parties, if they so choose, ques-
tion any of the jurors so called, and challenge for princi-
pal cause or for favor; if such challenges are allowed, the
clerk at once calls another juror in place of each so challenged,
so that twelve are always in the box unchallenged; challenges
for principal cause or for. favor having been exhausted or
waived, leaving twelve in the box unchallenged, the parties, if
they so choose, exercise the right of peremptory challenge, the
place of each so challenged being at once filled, so that no
challenge is made without the full number subject to challenge
being in the box. No juror is sworn in the cause until the
right of challenge is exhausted or the jury is accepted. And
this we consider the proper practice.

In this case, the panel of jurors summoned does not appear
to have been called; but it does appear that twelve were not
called in the cause before any were sworn, and that each juror
was called singly, singly questioned for ground of challenge
for principal cause or for favor, and, none such appearing, was
singly submitted to the parties for peremptory challenge, before
another was called, and if not so challenged was at once sworn
in the cause; and so on, until the jury was sworn. This was
by express ruling of the court below, to which the plaintiff in
error excepted.

We cannot but agree with the learned counsel for the plaint-
iff in error, that this mode of impaneling the jury largely im-
paired the right of peremptory challenge, essential in contem-
plation of law to the impartiality of the trial. For it is, as
Blackstone says, an arbitrary and capricious right; and it
must be exercised with full freedom, or it fails of its full pur-
pose. The mode adopted gave no opportunity for comparison
and choice between jurors, and little opportunity for observance
of each juror, apparently essential to the exercise of a right so
visionary and fanciful.

That was undoubtedly the English practice at the common law. But the court would, upon request, call over the panel for the accused to know and see those who were present, as "a considerable help to him in taking his challenges." *Townly's Case*, Foster, 7. And it has always been a fundamental rule, that no challenge to the array or to the polls can be made, until a full jury appear. Joy on Conf. and Challenge, 217; Forsyth's Jury, 177. And if there be not a full jury present, even a challenge to the array cannot be made until the panel is filled by *tales*. *Rex v. Edmonds*, 4 Barn. & Ald., 471.

It does not appear by this record that the court or counsel or prisoner had any means of knowing whether a full jury was present or which of the panel were present, when the plaintiff in error was put to her peremptory challenges. It does not appear that the jury was obtained from the regular panel, without *tales*. *Non constat* that twelve of the panel were present at any time.

Sec. 3, ch. 179, relates to offenses not punishable by imprisonment for life. It provides that the accused, "when the jury is impaneled for his trial," may "challenge peremptorily four of said jurors." This very plainly implies that a jury shall be called and in the box, according to the prevailing practice of the circuit courts, before the accused shall be called on to exercise the right of challenge.

It is not to be supposed that, in giving a larger number of challenges to one accused of a crime punishable by the greater punishment which stands with us instead of capital punishment, it could be the purpose of sec. 4 to give them with less advantage of use to the accused, than the less number given for less offenses. The language of sec. 4 is, may "challenge peremptorily twenty-four of the persons returned as jurors." This language does not require, but also does not exclude, the previous calling of the jury. We are to presume that the same practice was intended under both sections. We are to take the sections *in pari materia* together, to give a uniform

rule. And we hold the general language of sec. 4 controlled by the particular language of sec. 3; and we do so the more readily, in view of the practice generally prevailing when the statute was adopted.

By the common law, twelve must be present, by the statute twelve must be called in the cause, before the accused can be put to his challenges; and this full number of unchallenged and unsworn jurors must be maintained in the box until the parties have exhausted their challenges or accepted the jury. Then the jury should be sworn in the cause.

The rule is different in some of the states, as the authorities cited by the attorney general show; but we do not feel at liberty to abridge or impair so sacred a right, or to change what we understand to have been the general practice amongst us from the beginning, sanctioned by the common law and by our statute.

It follows that the judgment of the court below must be reversed, and a *venire de novo* awarded.

*By the Court.* — It is so ordered.